**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

2004 AUG 11  P 3: 30

U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| THE STATE OF CONNECTICUT OFFICE OF<br>PROTECTION AND ADVOCACY FOR PERSONS<br>WITH DISABILITIES, and JAMES MCGAUGHEY,<br>Executive Director of The State of Connecticut Office<br>Of Protection and Advocacy for Persons with Disabilities | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Plaintiffs, | ) CIVIL ACTION <br> ) NO. 3:04CV1338 <br> )       JCH |
| v. | ) <br> ) August 11, 2004 |
| HARTFORD BOARD OF EDUCATION,<br>HARTFORD PUBLIC SCHOOLS, and<br>ROBERT HENRY, in his official capacity as the<br>Superintendent of Schools | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## COMPLAINT

### I. PRELIMINARY STATEMENT

The plaintiffs, the State of Connecticut Office of Protection and Advocacy for Persons

with Disabilities (hereinafter "OPA") and James McGaughey ("McGaughey") (collectively

"Plaintiffs") bring this action for declaratory and injunctive relief pursuant to 42 U.S.C. §§

10801-10827, the Protection and Advocacy for Individuals with Mental Illness Act of 1986

(PAIMI), the Developmental Disabilities Assistance and Bill of Rights Act (hereinafter "DD

Act), 42 U.S.C. § 15041 et seq., and the Protection and Advocacy of Individual Rights

1

(hereinafter "PAIR") 29 U.S.C. § 794e, et seq. OPA challenges the refusal of Defendants

Hartford Board of Education (hereinafter "Board"), Hartford Public Schools (hereinafter "HPS")

and Robert Henry (hereinafter "Henry"), (collectively "Defendants") to disclose certain directory

information regarding the identity of parents or guardians of students attending the Hartford

Transitional Learning Academy (hereinafter HTLA), a school operated by Defendants.  That

directory information, which consists of names, addresses and phone numbers, would enable the

Plaintiffs to seek releases from those parents and guardians for the students' educational and

other records so that OPA may conduct an investigation into serious allegations of abuse and

neglect of students attending HTLA.  OPA additionally challenges Defendants' refusal to allow

OPA access to the HTLA facilities at times that the students are in attendance.  These refusals by

Defendants prevent OPA, the state and federally designated Protection and Advocacy System for

persons with disabilities in Connecticut, from fulfilling its statutory mandates of investigating

allegations of abuse and neglect as well as providing protection and advocacy services for

individuals with disabilities.  The actions of the Defendants further prevent OPA from

determining whether the rights of students to be free from abuse and illegal restraint are being

violated and whether there are appropriate procedures in place to prevent incidents of abuse and

neglect.

## II. JURISDICTION AND VENUE

1.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Plaintiffs'

federal claims are made pursuant to PAIMI, 42 U.S.C.  §§ 10801-10827, the DD Act, 42 U.S.C.

§ 15041 et seq.,  and PAIR, 29 U.S.C. § 794e, et seq.  Declaratory and injunctive relief are

authorized by 28 U.S.C. §§ 2201, 2202.

2.   Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) as all of the events

and omissions complained of below occurred in this district.

## III.  PARTIES

3.   Plaintiff OPA is the Connecticut Protection and Advocacy program designated by the

Governor of the State of Connecticut to provide protection and advocacy services to individuals

with disabilities.  Conn. Gen. Stat. § 46a-10.  It is also allotted federal funds pursuant to PAIMI,

the DD Act, and PAIR and is thereby obligated to similarly provide protection and advocacy for

persons with mental illness, developmental disabilities, and individuals with disabilities who are

not eligible under PAIMI or the DD Act.  42 U.S.C. §§ 10803 – 04, 42 U.S.C. § 15041 et seq.,

29 U.S.C. § 794e, et seq.  Under these statutes OPA is also authorized to investigate suspected

incidents of abuse and neglect and to pursue administrative, legal and other remedies on behalf

of individuals with mental illness wherever programs for such individuals are operated within the

State of Connecticut or within the state's control.  OPA is located at 60B Weston Street,

Hartford, CT  06120.

3

4.  Plaintiff James McGaughey is the Executive Director of OPA.  He is authorized to investigate and bring suit on behalf of persons with disabilities pursuant to Conn. Gen. Stat. § 46a-11.

5.  Defendant Hartford Board of Education is established pursuant to Conn. Gen. Stat. § 10-218.  Its responsibilities are designated in Conn. Gen. Stat. § 10-220(a) where it is mandated to "maintain good public elementary and secondary schools" and provide, inter alia, "a safe school setting."  Defendant Board is located at 960 Main Street, 8th floor, Hartford, Connecticut 06103.

6.  Defendant Hartford Public Schools is established pursuant to Conn. Gen. Stat. § 10-240.  Its powers are designated in Conn. Gen. Stat. § 10-241. Defendant HPS is located at 960 Main Street, 8th floor, Hartford, Connecticut 06103.

7.  Defendant Robert Henry is the Superintendent of School of the Hartford Public Schools.  Pursuant to Conn. Gen. Stat. §10-157 Henry is responsible for the supervision of the schools and serves as the chief executive officer of Defendant HPS.  Henry has executive authority over the school system and the responsibility for its supervision.   As Chief of Staff for the Hartford Public Schools, Henry is responsible for general oversight of the operations areas of the district, including Finance and Business Services, Grants Administration, Human Resources, Security, Buildings and Grounds and other departments.  He is being sued in his official capacity.  Defendant Henry maintains offices at Hartford Public Schools, 960 Main Street, 8th floor, Hartford, Connecticut 06103.

4

## IV.   FACTUAL ALLEGATIONS

8. Defendants operate the Hartford Transitional Learning Academy.   HTLA is a school

that, despite its label of "transitional," functions as a placement of last resort in the Hartford

Public School system.   HTLA primarily accepts children who have a label of "emotionally

disturbed" and who have not experienced success at placements at other schools within the

system, notably their local schools.   Upon information and belief, students who are placed at

HTLA have disabilities that include mental illness, developmental disabilities, brain injuries and

other disabilities including cognitive disabilities.   Children also have a documented history of

challenging negative behavior.   In order to be placed at HTLA a student and his/her parents or

guardians need to sign an agreement that permits the use of "time-out procedures and/or

restraints."   Students and their parents or guardians must also sign a form permitting the use of

"reasonable physical force when [an HTLA staff person] believes it is necessary to (a) protect

himself/herself or others from immediate physical injury; (b) obtain possession of a dangerous

instrument or controlled substance upon or within the control of such student or (c) **protect

property from physical damage**." (Emphasis added.) Attached hereto as Attachment 1.   HTLA

is located at 110 Washington Street, Hartford, CT  06106 with an additional facility at 150

Tower Avenue, Hartford, CT 06120.   HTLA is a facility as defined in the DD Act, PAIMI and

PAIR.  42 U.S.C. § 15043(a)(2)(A)(i) and 42 U.S.C. § 10802(4)(B)(ii), 29 U.S.C. § 794e(f)(2).

9.   As part of its regular intake process, OPA has received complaints from parents of

students at HTLA.   These complaints have included allegations that the students have been

5

subjected to inappropriate restraint and seclusion at HTLA.  Some of these allegations have included claims that the students were injured during the restraint process.  Aff. of Centeno at ¶ 4-10.  Attached hereto as Attachment 2. Upon information and belief, the students had a variety of disabilities including mental illness, developmental disabilities, and other cognitive impairments.  On information and belief students were also placed at HTLA with brain injuries.

10. Students are also placed at HTLA without adequate information to determine what kind of programming is required for the student.  For example, OPA learned that students with behavioral issues have not received a functional behavioral assessment to enable Defendants to develop a behavioral intervention plan.  The only "plan" these students have is that contained in the "Hartford Transitional Learning Academy, Student and Parent Handbook" at 12.  This handbook sets forth "Standards of Student Behavior/Behavior Management Plans."  Attached hereto as Attachment 3. This general plan violates the Individuals with Disabilities in Education Act (IDEA) in that it fails to provide an individualized plan for each particular child.  20 U.S.C. 1414(d)(3)(B).  This violation of IDEA places students at risk of inappropriate restraint and seclusion, and thus at risk of abuse and neglect.  Aff. of Garrison at ¶18-20 . Attached hereto as Attachment 4.

11. As a result of the complaints as set forth in paragraph 9 supra and the information set forth in paragraph 10 supra , OPA determined that it had probable cause to suspect that these students with disabilities were being subjected to abuse and neglect.  Based upon this probable

cause determination OPA decided to undertake an investigation of HTLA pursuant to its federal authority under PAIMI, the DD Act, and PAIR.

12. In a letter dated February 3, 2004, OPA notified Defendant Henry that investigators from OPA and The Office of the Child Advocate (hereinafter "OCA") would be jointly investigating "alleged programmatic deficiencies and violations of students rights." This letter stated that investigators from both offices would make an initial visit to the HTLA facility located at 110 Washington Street on Tuesday, February 10, 2004 at 9:00 am. The letter further informed Defendant Henry that the investigation would include "policy review, record review, interviews and direct observation of practices." OPA and OCA assured Defendant Henry that the investigators would "make every effort not to disrupt the educational environment." See Letter from OPA and OCA to Defendant Henry, February 10, 2004. Attached hereto as Attachment 5.

13. On Tuesday, February 10, 2004 investigators from OPA and OCA arrived at HTLA. Faith VosWinkel from OCA and Bruce Garrison from OPA went into the school office at approximately 8:30 am, signed in and informed the clerk where they were from and that they wished to see Barbara Macauley, the principal of HTLA. The clerk asked them to wait. Aff. of Garrison at ¶ 8-10 and Aff. of VosWinkel at ¶ 8-10. Attached hereto as Attachment 6.

14. When Macauley arrived at the office approximately 25 minutes later, she asked Mr. Garrison and Ms. VosWinkel to come into her office where Ms. VosWinkel told Macauley that they were there to initiate an investigation into HTLA. Aff. of Garrison at ¶ 12 and Aff. of VosWinkel at ¶ 12.

7

15. When Macauley expressed surprise and said she knew nothing about an investigation Ms. VosWinkel informed her that a letter had been sent to Defendant Henry. Aff. of Garrison at ¶ 13 and Aff. of VosWinkel at ¶ 13. Macauley informed Mr. Garrison and Ms. VosWinkel that she had not received a letter and asked what kind of investigation they intended to conduct. Ms. VosWinkel told her that they intended only to look at documents relating to policies, procedures and program descriptions of HTLA during this particular visit. She also stated that they planned additional visits to observe the programs at HTLA and to talk to faculty. She told Ms. McCauley that they would not be going into confidential student areas on that day. Aff. of Garrison at ¶ 14 and Aff. of VosWinkel at ¶ 14.

16. Macauley stated that before she could let Mr. Garrison and Ms. VosWinkel into the facility she needed to check with her administration. After leaving her office for approximately 10 minutes she returned and told them that she had spoken with Assistant Corporation Counsel Ann Bird who advised her not to let them into the facility or to review any documents. She then asked them to leave, which they did. Aff. of Garrison at ¶ 16 and Aff. of VosWinkel at ¶ 16.

17. On or about April 7, 2004 OPA and OCA met with Defendant Henry and Macauley and other officials from Defendant HPS and with counsel for the Defendants to try to resolve the question of access to the HTLA facilities for the purpose of conducting the investigation. OPA explained the areas of concern it had and explained its authority. OPA asked for directory information so that it could contact parents and guardians to seek consents for release of educational records and OPA renewed its request for access to the facilities. At the conclusion

8

of the meeting, OPA agreed that it would provide a letter to Defendants explaining its authority. On April 12, 2004 OPA wrote to counsel for Defendants and discussed the various statutes which provided this authority, and cited to case law.  OPA renewed its request for both directory information and access to the facilities.  See Letter from OPA to Ann Bird.  Attached hereto as Attachment 7.

18.  On May 3, 2004 counsel for Defendants responded to OPA's letter and, citing privacy concerns refuted in OPA's letter, refused to allow OPA access to either the directory information or the facilities.  See Letter from Bird to OPA.  Attached hereto as Attachment 8.

19. On July 20, 2004 counsel for OPA wrote to counsel for Defendants attempting to resolve the matter and informing Defendants that should the matter not be resolved the case would have to be litigated.  Attached hereto as Attachment 9.

20. Counsel for Defendants responded on July 22, 2004.  In that letter Defendants continued to refuse to allow Plaintiffs access to the directory information.  Defendants did state that they would allow Plaintiffs access to the HTLA facility, but only when the students were not present. Plaintiffs replied to this letter on July 27, 2004 and informed Defendants that this offer was not acceptable.  Attached hereto as Attachments 10 and 11.

21. To this date Defendants have allowed OPA only to have access to otherwise public documents.  OPA was not permitted into the HTLA facilities to review these documents. Defendants continue to refuse OPA access to HTLA when the students are present, continue to

9

refuse OPA access to the directory information, and thus continue to deny OPA the ability to conduct it's lawful investigation.

## V. CLAIMS FOR RELIEF

### First Claim for Relief – Violation of PAIMI

22.  Plaintiffs incorporate and re-allege paragraphs 1 through 21, as if fully set forth herein.

23.  OPA as Connecticut's designated Protection and Advocacy system has the authority to investigate incidents of abuse and neglect of individuals with mental illness to protect the rights of individuals with disabilities if there is probable cause to believe that the incidents occurred. 42 U.S.C. § 10805(a)(1)(A).

24.  PAIMI specifically grants to OPA the authority to access facilities and residents that provide assistance to individuals with mental illness to protect the rights of those individuals.  42 U.S.C.§ 10805(a)(C)(3), 42 C.F.R. § 51.42.

25. OPA has authority to have access to records of individuals with mental illness, including directory information of parents and guardians of students to protect the rights of those individuals.  42 U.S.C. § 10806, 42 C.F. R. § 51.41.

26. Defendants' refusal to permit OPA to have access to the HTLA facilities when the students are present, to have access to the directory information, or to conduct an investigation violates PAIMI.

27. Plaintiffs have no adequate remedy at law.

10

**Second Claim for Relief – Violation of the DD Act**

28. Plaintiffs incorporate and re-alleges paragraphs 1-21, as if fully set forth herein.

29. OPA as Connecticut's designated Protection and Advocacy system has the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities to protect the rights of individuals with disabilities if there is probable cause to believe that the incidents occurred.  42 U.S.C. § 15043(a)(2)(B).

30. The DD Act specifically grants to OPA the authority to access facilities and residents that provide assistance to individuals with developmental disabilities to protect the rights of those individuals.  42 U.S.C. § 15043(a)(2)(H), 45 C.F.R. § 1386.22(f) and (g).

31. OPA has the authority to have access to records of individuals with developmental disabilities, including directory information of parents and guardians of students to protect the rights of individuals with disabilities.  42 U.S.C. 15043(a)(2)(I) and (J). 45 C.F.R. § 1386.22(a)-(e).

32. Defendants' failure to permit OPA to have access to HTLA facilities when students are present, to have access to the directory information and to conduct an investigation violates the DD Act.

33. Plaintiffs have no adequate remedy at law.

**Third Claim for Relief – Violation of PAIR**

34. Plaintiffs incorporate and re-allege paragraphs 1-21, as if fully set forth herein.

11

35. OPA as Connecticut's designated Protection and Advocacy system has the authority to investigate incidents of abuse and neglect of individuals with disabilities under PAIR to protect the rights of individuals with disabilities if there is probable cause to believe that the incidents occurred.  29 U.S.C. § 794e(f)(2).

36. PAIR specifically grants to OPA the authority to access facilities and residents that provide assistance to individuals with disabilities to protect the rights of those individuals.  26 U.S.C. § 794e(f)(2).

37. OPA has the authority to have access to records of individuals with disabilities, including directory information of parents and guardians of students to protect the rights of those individuals.  26 U.S.C. § 794e(f)(2).

38. Defendants' failure to permit OPA to have access to HTLA facilities when students are present, to have access to the directory information and to conduct an investigation violates PAIR.

## VI.  REQUESTS FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court:

A.  Enter a declaratory judgment, in accordance with 28 U.S.C. § 2201, declaring that the Defendants' actions and failures to act violate PAIMI, the DD Act, and PAIR by:

   i)  Denying the Plaintiffs access to HTLA facilities when students are present; and

12

ii) Denying the Plaintiffs access to directory information of parents and/or guardians of students at HTLA;

iii) Preventing OPA from fully performing its statutory duty to investigate incidents of suspected abuse and neglect of persons all in violation of PAIMI, the DD Act, and PAIR;

B.  Enter preliminary and thereafter permanent injunctive relief, pursuant to 28 U.S.C. § 2202, requiring Defendants to provide OPA with access to HTLA when the students are present, with access to directory information of parents and/or guardians of students at HTLA and to permit OPA to conduct an investigation.

C.  Retain jurisdiction over this action to ensure Defendants' compliance with the mandates of PAIMI, the DD Act and PAIR;

D.  Order such other, further, or different relief as the Court deems equitable and just.

Respectfully submitted,

The Plaintiffs,
The State of Connecticut
Office of Protection and Advocacy
For Persons with Disabilities
James McGaughey

By: NANCY B. ALISBERG
Office of Protection and Advocacy
For Persons with Disabilities
60B Weston Street
Hartford, CT 06120
Fed. Bar. No. CT 21321

13

(860) 297-4397
Fax: (860) 566-8714
nalisberg@po.state.ct.us

By: _____
PAULETTE G. ANNON
Office of Protection and Advocacy
For Persons with Disabilities
60B Weston Street
Hartford, CT 06120
Fed. Bar No. CT21556
Fax: (860) 566-8714
(860) 297-4329
paulette.annon@po.state.ct.us

Attorneys for the Named Plaintiffs

DATED: _____8·11·04_____

14